UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DR. RED WASHBURN,

                         Plaintiff,

           -against-                    **MEMORANDUM AND ORDER**
                                                                    20-cv-00395 (DLI)(RLM)

KINGSBOROUGH COMMUNITY COLLEGE,
CITY UNIVERSITY OF NEW YORK, DR.
JOANNE RUSSELL, DR. EILEEN FERRETTI,
MICKIE DRISCOLL, JAMES CAPOZZI, DR.
MICHAEL BARNHART, DELISE CHUNG, and
ROXANNA THOMAS

                        Defendants.
-----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On January 24, 2020, Red Washburn ("Plaintiff") commenced this action against Kingsborough Community College ("Kingsborough"), City University of New York ("CUNY"), Joanne Russell ("Russell"), Eileen Ferretti ("Ferretti"), Mickie Driscoll ("Driscoll"), James Capozzi ("Capozzi"), Michael Barnhart ("Barnhart"), Delise Chung ("Chung"), and Roxanna Thomas ("Thomas") (collectively, "Defendants"), asserting discrimination based on Plaintiff's status as a genderqueer, nonbinary, and gender non-conforming transgender person, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Civil Rights Act of 1871, 42 U.S.C. § 1983, the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYHRL"), and the New York City Administrative Code § 8-101 *et seq.* ("NYCAC"). *See*, Compl., Docket ("Dkt") Entry No. 1.

On June 3, 2020, Defendants moved to dismiss on the grounds that Plaintiff's claims are prolix in violation of Federal Rule of Civil Procedure 8, time barred, and fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See*, Defs.' Notice of Mot. to Dismiss the Compl., Dkt. Entry No. 24; Defs.' Mem. of Law in Supp. of its Mot. to Dismiss the Compl. ("Def. Mem."), Dkt. Entry No. 26. Plaintiff opposed. *See*, Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Compl. ("Pl. Opp'n"), Dkt. Entry No. 31. Defendants replied. *See*, Defs.' Reply Mem. of Law in Further Support of its Mot. to Dismiss the Compl. ("Def Reply."), Dkt. Entry No. 34. For the reasons set forth below, the Complaint is dismissed without prejudice for failure to comply with Rule 8 and Plaintiff is granted leave to amend the Complaint.

## BACKROUND

The following facts are taken from the Complaint and are accepted as true for purposes of this decision. *See*, *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013). Although the Complaint is 98 pages with 846 paragraphs, neither Defendants nor Plaintiff have attempted to meaningfully summarize its contents in their memoranda of law. *See*, Def. Mem. at 8 (providing one paragraph recitation of facts); Pl. Opp'n at 4 (providing one page recitation of facts).

Plaintiff uses the singular pronouns "they" and "them," and these pronouns are used in this decision to refer only to Plaintiff. *See*, Compl. at ¶ 3. Plaintiff is an English professor and co-director of the Women and Gender Studies concentration ("WGS") at Kingsborough. *Id.* at ¶¶ 2, 32, 53. Defendants Russell, Ferretti, Driscoll, Barnhart, Capozzi, Chung, and Thomas were, at all relevant times, employees of Kingsborough. *Id.* at ¶¶ 10; 518. Defendant CUNY supervises, manages, and administers Kingsborough and its academic programs and requirements. *Id.* at ¶ 14.

In the fall of 2017, Plaintiff informed colleagues that they were transgender, changed their name from "Amy" to the gender neutral "Red," and changed their pronouns to "they, them, their."

*Id.* at ¶¶ 54-55.  In addition, Plaintiff advised colleagues that in the Summer of 2018, they would undergo "top surgery," which is a gender confirming medical procedure.  *Id.* at ¶ 58.

Plaintiff alleges that since they came out as transgender at work, "they have experienced ongoing discrimination, including harassment and hostile work environment, in their terms, conditions and privileges of employment[.]" *Id.* at ¶ 64.  Although Plaintiff claims that Defendants began discriminating against them when they came out as transgender in the fall of 2017, they also allege that Defendant Russell discriminated against them as early as Spring of 2016.  *See*, *Id.* at ¶¶ 98, 100, 104-05, 115, 122-26.  Plaintiff further alleges that Defendants discriminated and retaliated against them by attempting to destroy the WGS concentration in order to reduce Plaintiff's role at Kingsborough and to "force them to resign by creating disrespectful conditions intolerable to any reasonable faculty member and scholar."  *Id.* at ¶¶ 33 and 66.

According to Plaintiff, Defendants Ferretti, Russell, and Barnhart consistently have referred to Plaintiff incorrectly as "Amy" or "Dr. Washburn," instead of "Red," or otherwise misgendered them.  *Id.* at ¶¶ 64, 85-87, 138, 174-82, 275, 279, 283, 480.  Moreover, although Plaintiff has requested that their name "be changed in email, course catalogs, HR, payroll, Public Safety ID, and other university publications and documents, Defendants, including Driscoll, at first refused to make the changes, then demanded documentation and then more documentation[] [and] [w]hen the requested documentation was provided, Defendants then chose to change [Plaintiff's name] only [in] certain systems and not others."  *Id.* at ¶¶ 186-87.  Additionally, Driscoll informed Plaintiff that they could not change their gender designation to "transgender, nonbinary, and gender non-conforming," because the Kingsborough and CUNY systems only allow one gender designation.  *Id.* at ¶¶ 352-68.

Plaintiff further alleges that, in September 2018, Russell directed Plaintiff and their colleagues to "remove hundreds of files, books, student projects and personal faculty belongings" while Plaintiff was recovering from surgery and receiving accommodations for disability, thereby causing Plaintiff "additional psychological stress." *Id.* at ¶¶ 295-300. Additionally, that September, Plaintiff was relegated to a small shared office that generally is assigned to non-tenured instructors, even though Plaintiff is tenured. *Id.* at ¶¶ 310-12. When Plaintiff asked Ferretti and Russell for a larger office, noting that they were being treated unequally and that this treatment was motivated by bias and retaliation, Ferretti and Russell ignored Plaintiff's concerns. *Id.* at ¶¶ 330-43.

Plaintiff also alleges that Russell and Capozzi retaliated against them in response to a campaign initiated by WGS faculty and students to raise awareness of resource cuts made to the WGS program. *Id.* at ¶¶ 251-53, 261-62. Specifically, in response to an article about WGS resource cuts that WGS students had published in the campus newspaper, Russell cut funding for the campus newspaper. *Id.* at ¶¶ 254-57. Capozzi, Director of Public Safety, then "summoned students, most of whom were queer women of color, to interrogate them about the campaign regarding WGS[.]" *Id.* at ¶ 260. Subsequently, Chung and Capozzi notified Plaintiff that the Public Safety Department was investigating the campus campaign for WGS, but never proceeded with the investigation. *Id.* at ¶¶ 270-85. Plaintiff further alleges that, in retaliation for Plaintiff's participation in various activities in which they spoke out about Kingsborough's institutional transphobia against students and faculty, Barnhart, Ferretti, and Russell removed Plaintiff from the Strategic Planning Committee and cancelled one of Plaintiff's classes. *Id.* at ¶¶ 369-76; 382-87; 395, 403, 411, 419-22, 432-43.

With respect to the WGS program, Plaintiff alleges that: (1) Russell eliminated the WGS administrative assistant; (2) Russell eliminated a WGS co-director, thereby leaving Plaintiff as the sole WGS director with no mentorship and an "enormous workload"; (3) Russell and Ferretti disregarded the recommendations of WGS faculty regarding course work and instructors; (4) one business day before the beginning of the fall semester, Russell and Ferretti cancelled one of Plaintiff's classes, thereby requiring Plaintiff to rearrange their schedule multiple times, which caused extreme stress while they were recovering from top surgery; (5) Russell refused to look at the proposal that Plaintiff and WGS faculty had created to turn the WGS concentration into a major; (6) Russell declared that WGS would no longer be an independent interdisciplinary concentration housed within the Liberal Arts Department and, instead, would be housed in the Behavioral Sciences and Human Services Department; (7) Russell took away the time allotted to administer the WGS from Plaintiff and their co-director in order to undermine Plaintiff's role as WGS director; (8) Russell relocated the WGS program from "its spacious office to a tiny closet far away on the large 71-acre Kingsborough campus[,]" while providing larger offices to heterosexual cisgender men; (9) the President of Kingsborough discriminated against WGS; and (10) Russell attempted to decrease enrollment in the WGS concentration. *Id.* at ¶¶ 134-35, 139, 141-42, 144-46, 160-72, 199-202; 207-16, 219-20, 227, 233, 243-45; 289; 304-10; 344-52; 444-85. Plaintiff further alleges that Defendants took discriminatory actions against students in the WGS concentration, who are not parties to this action. *Id.* at ¶¶ 258; 263-69, 486-505.

On October 12, 2018, Plaintiff filled a discrimination complaint with Kingsborough. *Id.* at ¶ 517. Defendant Thomas held a meeting with Plaintiff to discuss the complaint, but rather than listening to Plaintiff, Thomas "appeared to be acting as a partisan on behalf of the College, rather than a neutral investigator of facts." *Id.* at ¶¶ 518-26, 530. Consequently, Plaintiff's

5

attorney requested that Thomas be recused from the investigation, but Kingsborough rejected this request. *Id.* at ¶¶ 532-34. Thomas conducted no further investigation or follow up on the information Plaintiff provided and issued a two-page report indicating that Plaintiff's complaint had no merit, which Plaintiff alleges was done in retaliation for Plaintiff's complaints. *Id.* at ¶¶ 535-38.

On November 21, 2018, Plaintiff filed a complaint with the New York Commission on Human Rights and the Equal Employment Opportunity Commission. *Id.* at ¶¶ 15-17. After exhausting these administrative remedies, Plaintiff commenced the instant action. *Id.* at ¶¶ 18-21.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 8, a complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Moreover, "[e]ach allegation must be simple, concise, and direct." *Id.* at 8(d)(1). Rule 8 is intended to prevent "unnecessary prolixity," which "places an unjustified burden on the court and the responding party." *In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).

"A complaint should not be a preview of counsel's argument to the jury at the end of the case" . . . and it "should avoid unnecessary facts, descriptive terms, . . . repetitions . . . argumentative language, or characterizations[.]" *Politico v. Promus Hotels, Inc.*, 184 F.R.D. 232, 233-34 (E.D.N.Y. 1999). Allegations should be direct and concise because they "should be relevant to the cause of action brought." *In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*, 218 F.R.D. at 78 (citation omitted). "When a complaint fails to comply with [the Rule 8] requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint

6

or to strike such parts as are redundant or immaterial[.]" *Celli v. Cole*, 699 F. App'x 88, 89 (2d Cir. 2017) (Summary Order) (internal quotation marks and citation omitted).

## DISCUSSION

The Complaint fails to comply with Rule 8. At 98 pages and 846 paragraphs, the Complaint is far from a short and concise statement of facts. Rule 8 "places the burden squarely upon" Plaintiff to succinctly state their claims, and it is neither Defendants' nor the Court's duty to "sift through the Complaint and guess which factual allegations support which claims." *Infanti v. Scharpf*, 2008 WL 2397607, at *2-3 (E.D.N.Y. June 10, 2008) (internal quotation marks and citation omitted).

Here, the surplus of details renders it nearly impossible for the Court to determine which facts are relevant to Plaintiff's claims. Initially, the Complaint devotes considerable time to defining gender identity and related terms and detailing the intricacies of Kingsborough's various departments and the WGS curriculum. *See, e.g.*, Compl. at ¶¶ 35-53; 67-72. Moreover, rather than connecting specific discriminatory or retaliatory actions by Defendants to Plaintiff's status as a transgender individual, the Complaint painstakingly describes every interaction that Plaintiff had with Defendants, including non-discriminatory interactions, such as when Defendants granted Plaintiff's request for accommodations related to their top surgery. *See, e.g.*, *Id.* at ¶¶ 58-62. The Complaint also details Defendants' interactions with individuals who are not parties to this lawsuit, including purported discrimination against Kingsborough students. *See*, *Id.* at ¶¶ 258; 263-69, 486-505; 613. Finally, the Complaint is often redundant, argumentative, and long-winded. *See, e.g.*, *Id.* at ¶¶ 64-87 (proving generalized summary of facts, which are detailed in later paragraphs); *Id.* at ¶¶ 286-89 (explaining that Russell's reorganization of campus space, which included moving the WGS office, "provided a perfect pretext for . . . Russell to discriminate and retaliate against

[Plaintiff]"); *Id.* at ¶¶ 286-343 (describing the process of relocating the WGS office, including every related conversation between Plaintiff and Defendants).

Courts faced with similarly prolix complaints have dismissed them, even when such complaints were filed by *pro se* litigants. *See, e.g.*, *Celli*, 699 F. App'x at 89 (affirming dismissal of *pro se* complaint for failure to comply with Rule 8); *Tsekhanskaya v. City of New York*, 2020 WL 5802329, at *6 (E.D.N.Y. Sept. 29, 2020) (dismissing *pro se* complaint for failure to comply with Rule 8). Notably, the Complaint in this action is drafted by counsel and, as such, its noncompliance with Rule 8 is unacceptable. While Plaintiff might consider every interaction with Defendants significant, it is counsel's job to determine which facts are relevant to Plaintiff's legal claims and present them in a clear and concise manner.

Plaintiff's counsel "acknowledges that the Complaint is longer than most employment discrimination cases[,]" yet seeks to justify the length of the Complaint as necessary to properly establish that Defendants "orchestrated [a] campaign of hostility." *See*, Pl. Opp'n at 5. However, the nature of Plaintiff's claims is not so complex as to warrant an 846 paragraph complaint. Even in cases asserting claims of fraud under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, where it is well established that "complaints often might need to be somewhat longer than many complaints," courts have dismissed complaints that fail to comply with Rule 8. *See*, *Infanti*, 2008 WL 2397607, at *3 (internal quotation marks and citations omitted) (dismissing, under Rule 8, 90 page, 500 paragraph RICO complaint); *Roberto's Fruit Mkt., Inc. v. Schaffer*, 13 F. Supp.2d 390, 396 (E.D.N.Y. 1998) (dismissing, *sua sponte* under Rule 8, 108 page and 385 paragraph RICO complaint).

The Complaint's failure to comply with Rule 8 warrants dismissal. However, the Second Circuit has instructed that where, as here, a complaint is not "incomprehensible, and it . . . pleads

8

at least some . . . claims that cannot be termed frivolous on their face[,]" plaintiffs should be granted leave to amend. *Roberto's Fruit Mkt., Inc.*, 13 F. Supp.2d at 397 (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir. 1988)). Accordingly, Plaintiff is granted leave to amend the Complaint by no later than May 7, 2021 with instructions to pay special heed to the pleading requirements of Rule 8.

In light of this ruling, the Court need not address Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

For the reasons set forth above, the Complaint is dismissed without prejudice, as prolix in violation of Rule 8 and Plaintiff is granted leave to amend the Complaint by no later than May 7, 2021 with instructions to pay special heed to the pleading requirements of Rule 8.

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2021

/s/
DORA L. IRIZARRY
United States District Judge