UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DR. RED WASHBURN,                         :
                                          :
                    Plaintiff,            :
                                          :
         -against-                        :            **OPINION AND ORDER**
                                          :            **20-cv-0395(DLI)(MMH)**
KINGSBOROUGH COMMUNITY COLLEGE,           :
DR. JOANNE RUSSELL, DR. EILEEN            :
FERRETTI, MICKIE DRISCOLL, DR. MICHAEL    :
BARNHART, JAMES CAPOZZI, DELISE           :
CHUNG, ROXANNA THOMAS, and CITY           :
UNIVERSITY OF NEW YORK                    :
                                          :
                    Defendants.           :
------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Before the Court is Defendants' motion to dismiss the TAC filed in this case. For the

reasons set forth below, the motion to dismiss is granted with prejudice as to the federal claims

and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims,

which are dismissed without prejudice.

## PROCEDURAL BACKGROUND

On January 24, 2020, Dr. Red Washburn ("Plaintiff") commenced this action against

Kingsborough Community College ("Kingsborough"), Joanne Russell ("Russell"), Eileen Ferretti

("Ferretti"), Mickie Driscoll ("Driscoll"), Michael Barnhart ("Barnhart"), James Capozzi

("Capozzi"), Delise Chung ("Chung"), Roxanna Thomas ("Thomas"), and the City University of

New York ("CUNY") (collectively, "Defendants"), alleging discrimination, based on Plaintiff's

status as a genderqueer, nonbinary, and gender non-conforming transgender person, in violation

of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"),

Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, the Americans with Disabilities Act of

1990, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Civil Rights Act of 1871, 42 U.S.C. § 1983, the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101, *et seq.* ("NYCHRL"). *See*, Third Am. Compl. ("TAC"), Dkt. Entry No. 54.

On June 3, 2020, Defendants moved to dismiss the original complaint on the grounds that it was prolix in violation of Federal Rule of Civil Procedure 8 ("Rule 8"), the claims failed to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), and the claims were time barred. *See*, Defs.' Notice of Mot. to Dismiss the Compl., Dkt. Entry No. 24; Defs.' Mem. of Law in Supp. of Mot. to Dismiss the Compl., Dkt. Entry No. 26. On March 31, 2021, the Court granted the motion to dismiss without prejudice and with leave for Plaintiff to amend the complaint consistent with the Court's Memorandum and Order, by no later than May 7, 2021. *See*, First Memorandum and Order ("First M&O"), Dkt. Entry No. 36. Plaintiff timely filed the Amended Complaint. *See*, Am. Compl., Dkt. Entry No. 38.

On June 3, 2021, Defendants moved to dismiss the amended complaint on the grounds that it still was prolix in violation of Rule 8, failed to state a claim upon which relief could be granted under Rule 12(b)(6), and the claims were time barred. *See*, Defs.' Notice of Mot. to Dismiss the Am. Compl., Dkt. Entry No. 40; Defs.' Mem. of Law in Supp. of Mot. to Dismiss the Am. Compl., Dkt. Entry No. 41. Contrary to the Court's Order to file an opposition to the motion to dismiss, and despite having been granted an extension of time to do so, Plaintiff inappropriately filed a Second Amended Complaint without first seeking leave of the Court in violation of Fed. R. Civ. P. 15(a)(2). *See*, Electronic Order dated July 2, 2021. As Plaintiff no longer was permitted to amend their complaint as of right, the second amended complaint was stricken. *Id*. On March 22, 2022, the Court granted the motion to dismiss without prejudice and with leave for Plaintiff to

amend the complaint consistent with the Court's Memorandum and Order, by no later than April 21, 2022. *See*, Second Memorandum and Order ("Second M&O"), Dkt. Entry No. 53. Plaintiff timely filed the Third Amended Complaint ("TAC"). *See*, TAC, Dkt. Entry No. 54.

On June 13, 2022, Defendants moved to dismiss the TAC on the grounds that it failed to provide fair notice in violation of Rule 8, failed to state a claim upon which relief could be granted in violation of Rule 12(b)(6), and the claims were time barred. *See*, Defs.' Notice of Mot. to Dismiss the TAC, Dkt. Entry No. 56; Defs.' Mem. of Law in Supp. of Mot. to Dismiss the TAC ("Defs.' Mem."), Dkt. Entry No. 56-1. On June 27, 2022, Plaintiff opposed the motion to dismiss. *See*, Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the TAC ("Pl.'s Opp."), Dkt. Entry No. 57. On July 1, 2022, Defendants replied. *See*, Defs.' Reply Mem. of Law in Further Supp. of Mot. to Dismiss the TAC ("Defs.' Reply"), Dkt. Entry No. 58.

## FACTUAL BACKGROUND[1]

Plaintiff is a tenured Associate Professor of English at Kingsborough, directs the Women's and Gender Studies Concentration ("WGS Program"), and has received awards, grants, and positive performance reviews throughout their employment. TAC at ¶¶ 2, 33. Kingsborough is a community college that is part of the City University of New York ("CUNY") system. *Id*. at ¶ 13. CUNY receives federal funding and supervises, manages, and administers Kingsborough and its academic programs and requirements. *Id*. at ¶¶ 12, 14. At all relevant times, the Individual Defendants were employees of Kingsborough. *Id*. ¶ 10. Specifically, Russell served as the

---

[1] The factual background recounted herein is drawn from the TAC. As Plaintiff uses the pronouns "they" and "them" to refer to themselves, the Court uses the same pronouns to refer to Plaintiff. TAC at ¶ 4. Additionally, the conclusory, disorganized, rambling, and vague nature of the TAC makes assessing the merits of Plaintiff's allegations challenging. However, the Court views the TAC in the light most favorable to Plaintiff by "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1076 (2d Cir. 2021) (citation omitted).

Kingsborough's Provost; Ferretti served as Chair of the English Department; Driscoll served as Executive Director of Human Resources and Labor Designee; Barnhart served as Chair of the History Department; Thomas served as Kingsborough's Title IX Coordinator; Chung served as a member of Kingsborough's Public Safety Department; and Capozzi served as Director of Public Safety. *Id.* at ¶¶ 10, 74.

Plaintiff contends that they are disabled because of their "gender dysphoria, and physical limitations due to gender-confirming surgery, and other physical and mental impairments." *Id.* at ¶ 16. However, the TAC does not define gender dysphoria, identify any of Plaintiff's physical and mental impairments, or specify how gender dysphoria or these physical and mental impairments impact Plaintiff. Additionally, while Plaintiff also contends that Defendants perceived them as disabled, the TAC provides no information beyond that conclusory assertion. *Id.* at ¶¶ 178, 210, 242.

Plaintiff began identifying as transgender within the past six years and contends that they were subjected to discrimination and retaliation after publicly acknowledging their gender identity. *Id.* at ¶¶ 29, 35, 37. However, The TAC does not allege when Plaintiff publicly acknowledged their gender identity, how they publicly acknowledged it, or how each defendant had knowledge of Plaintiff's gender identity. Without specifying exact dates, the TAC alleges that, sometime during the past six years, Russell and Ferretti: (1) rejected Plaintiff's grants;[2] (2) prohibited Plaintiff from applying for grants; (3) rejected Plaintiff's longstanding teaching arrangement with Hunter College; (4) prevented Plaintiff's transfer to another CUNY college; (5) removed Plaintiff from unknown school committees; (6) switched Plaintiff's courses and course times, which purportedly interfered with unspecified accommodations for an unidentified disability; (7) denied

---

[2] The TAC does not provide any additional information beyond alleging "rejection for grants."

Plaintiff unspecified accommodations for an unidentified disability; (8) reduced benefits to the WGS Program while providing benefits to other programs; (9) denied Plaintiff access to the WGS Program's office and records; (10) eliminated the WGS Program's administrative assistant; and (11) moved Plaintiff's office to a storage closet filled with boxes and contaminated by mold. *Id.* at ¶ 37.

Plaintiff further alleges that Russell expressed discomfort with Plaintiff's gender and gender identity and with the WGS Program's teachings about transgender, nonbinary, and genderqueer issues on several occasions. *Id.* at ¶ 36. However, the TAC does not specify when this occurred or allege any facts as to how Russell expressed "discomfort." Additionally, while the TAC alleges that "no other employee of Defendant Kingsborough similarly situated to Plaintiff has been subjected to the differential treatment and adverse actions Plaintiff received[,]" it fails identify these individuals or provide any specific comparator evidence. *Id.* at ¶¶ 137, 166.

Plaintiff also alleges that non-parties to this action faced threats and adverse consequences when expressing support for the WGS Program. *Id.* at ¶¶ 38, 51-58. For example, Capozzi allegedly "summoned students to interrogate them about their actions in posting writings in support of Dr. Washburn's program." *Id.* at ¶ 53. Russell allegedly supervised the process where unidentified members of Public Safety interrogated WGS Program students, threatened them with expulsion, and made it harder for them to graduate. *Id.* at ¶¶ 38, 55-56. Moreover, the office of another professor was relocated after having supported a WGS Program student for a newspaper article the student had written. *Id.* at ¶ 51.

During the Summer of 2018, and on subsequent occasions, Plaintiff requested that their name and gender be changed on Kingsborough records; however, they were informed that these requests could not be accommodated. *Id.* at ¶ 42. According to Plaintiff, Driscoll informed

Plaintiff that they could not select multiple gender designations on the gender change forms since Kingsborough and the CUNY system only allow one gender designation. *Id.* at ¶ 43. However, Plaintiff was able to change their name on college records while the College Catalog continued to use Plaintiff's former female name. *Id.* at ¶ 48. Plaintiff further contends that Defendants misgendered Plaintiff "on many occasions, in person and in writing, despite having clear notice of Plaintiff's proper name, title, and preferred pronouns." *Id.* at ¶ 47. However, the TAC does not allege how Defendants had "clear notice" of Plaintiff's preferred pronouns nor what statements were made by each defendant to Plaintiff.

During the Fall of 2018, Plaintiff purportedly testified before government bodies, spoke at school events, drafted both an op-ed article and public petition, and informed scholars about the events at Kingsborough involving the WGS Program. *Id.* at ¶ 61. Additionally, Plaintiff spoke about perceived discrimination, official misconduct regarding the rights of women and transgender people, and the studies of gender rights at colleges nationwide, including Kingsborough. *Id.* at ¶¶ 63, 67. According to Plaintiff, these issues were of political and public concern and resulted in letters of support from academics and members of the New York City Council. *Id.* at ¶¶ 66, 68-69. Plaintiff contends that Defendants retaliated against Plaintiff because of these activities. *Id.* at ¶ 72. However, the TAC does not specify what retaliatory act(s) allegedly occurred after and/or in response to Plaintiff's activities.

On October 12, 2018, Plaintiff filed a Title IX Complaint based on sex discrimination and retaliation for making complaints of sex discrimination. *Id.* at ¶ 73. The TAC does not specify: (1) what allegation(s) of sex discrimination Plaintiff included in the Title IX Complaint; (2) how and when Plaintiff previously complained about sex discrimination; or (3) the retaliatory acts that Plaintiff suffered in response to any previous complaint. On October 26, 2018, Plaintiff met with

Thomas, Kingsborough's Title IX Coordinator, to discuss the Title IX Complaint. *Id*. at ¶ 74. Plaintiff contends that Thomas' investigation failed to incorporate the witnesses that Plaintiff mentioned, largely ignored Plaintiff's grievances, and concluded with an error ridden report that found Plaintiff's Title IX Complaint to be without merit. *Id*. at ¶¶ 74-75. However, the TAC fails to specify the witnesses and grievances that were ignored, as well as Thomas' purported errors. Plaintiff contends that the end result of the investigation was in retaliation for their complaints against Russell. *Id*. at ¶ 76.

On November 16, 2018, Driscoll allegedly rejected Plaintiff's accommodations request without an interactive process or cooperative dialogue. *Id*. at ¶ 46. However, the TAC does not allege what accommodations Plaintiff sought, what Plaintiff's underlying disability was, or how Plaintiff could perform the essential functions of their job with an accommodation.

On November 21, 2018, Plaintiff filed complaints with the New York City Commission on Human Rights ("CCHR") and the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id*. at ¶ 15. Plaintiff amended these complaints on October 24, 2019. *Id*. at ¶ 17. On November 19, 2019, Plaintiff withdrew their complaint from the CCHR and requested that EEOC issue a dismissal and notice of right to sue. *Id*. at ¶¶ 8-19. Plaintiff does not indicate whether they received a right to sue letter nor do they provide the Court with a copy of the CCHR or EEOC complaints.[3]

Finally, Plaintiff contends that, at some unspecified time, Ferretti informed Plaintiff that she would not support the WGS Program in the English Department "for obvious reasons" and met with Russell to remove "WGS" course designations from almost all English classes, including

---

[3] While the TAC fails to indicate whether Plaintiff received a right to sue letter, it states that Plaintiff "took all necessary steps to exhaust their administrative remedies" and "took all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit." *Id*. at ¶¶ 20-21. Any problem regarding the exhaustion of administrative proceedings before initiating a lawsuit is an affirmative defense rather than a jurisdictional limitation. *See*, *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018).

Plaintiff's class. *Id.* at ¶¶ 39-40. According to Plaintiff, "for obvious reasons" referred to their discrimination complaints and that removing the "WGS" course designation harmed their ability to teach. *Id.* However, the TAC lacks allegations concerning the context of Plaintiff's interaction with Ferretti and how removing course designations harmed Plaintiff's ability to teach.

## DISCUSSION

### I.      Federal Rule of Civil Procedure 8

#### A.      Legal Standard

Pursuant to Rule 8(a), pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). When a complaint fails to comport with Rule 8, courts are empowered to dismiss the complaint but should reserve dismissal "for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (citation omitted) (emphasis added).

### B.    Analysis

For a third time, Defendants move to dismiss this action pursuant to Rule 8.  Defendants contend that Plaintiff failed to provide fair notice of the allegations against Defendants and relevant dates as to when purported violative conduct occurred.  *See*, Defs.' Mem. at 12-13.  While the Court provided Plaintiff with two opportunities to amend their complaint, along with an explanation as to the issues and a warning that no further amendments would be allowed, the TAC still contains multiple deficiencies.  First M&O at 7-9; Second M&O at 4-6.

The TAC still contains dozens of ambiguous, conclusory, and vague allegations that lack context or specificity.  Furthermore, its disorganized nature and the ineffective use of headings creates an unnecessary complexity in assessing which allegations correlate to the relevant cause of action.  Previously, the Court found that similar issues caused Plaintiff's complaints to violate Rule 8 because the complaints were too prolix and contained an exorbitant amount of irrelevant, unnecessary information. *Id*.  Indeed, the TAC still contains irrelevant information and lacks critical pieces of information.  Essentially, Plaintiff repackaged allegations from the previous complaints and left out some allegations altogether. For example, Barnhart's and Chung's names appear only in the headings for certain causes of action and when identifying their jobs at Kingsborough.  Similarly, Capozzi's name appears only when identifying his job and in alleging an action that he took against non-parties.  In addition, many of allegations lack factual development and are conclusory in nature.  Finally, nearly of all the allegations set forth in the TAC lack specificity, including dates and the frequency of occurrence.

The Second Circuit has defined "fair notice" as "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Wynder v. McMahon,* 360 F.3d 73, 79

(2d Cir. 2004) (quoting *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir. 1995)). While the TAC has multiple deficiencies as described above, it just barely "disclose[s] sufficient information to permit the defendant[s] to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Id.* Specifically, the TAC "identifies discrete defendants and the actions taken by [some of] these defendants" that purportedly violated Plaintiff's rights. *Id.* Additionally, Plaintiff's failure to articulate specific dates for nearly all allegations does not run afoul with Rule 8 necessarily. *Id.* at 142. Accordingly, Defendant's motion to dismiss the TAC pursuant to Rule 8 is denied.

## II.    Federal Rule of Civil Procedure 12(b)(6) Legal Standard

Pursuant to Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The Rule 12(b)(6) standard is incorporated in the analysis of the various claims set forth below.

## III.    Statute of Limitations

Defendants move to dismiss any allegations based on events that occurred prior to January 25, 2018 as time barred under Title VII. Defs.' Mem. at 15-16. "A Title VII plaintiff must file a charge with the EEOC within 300 days 'after the alleged unlawful employment practice occurred'; claims based on conduct that occurred more than 300 days before the plaintiff filed [their] EEOC charge are time barred." *Staten v. City of New York*, 653 F. App'x 78, 80 (2d Cir. 2016) (quoting

42 U.S.C. § 2000e–5(e)(1)).  Under Rule 8(c)(1), the lapse of a limitations period is an affirmative

defense that a defendant is required to plead and prove.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*,

547 F.3d 406, 425 (2d Cir. 2008).  "[A] defendant may raise an affirmative defense in a pre-answer

Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Id.*

Here, the TAC does not identify allegations with dates preceding January 25, 2018.

Moreover, as to undated allegations, courts only consider whether they state a claim on the merits.

*See*, *Bonterre v. City of New York*, 2021 WL 4060358, at *4 (S.D.N.Y. Sept. 7, 2021) (citation

omitted).  At this juncture, to the extent that any allegation may state a claim, the Court cannot

conclude whether they are time barred.  Accordingly, Defendants' motion to dismiss any claims

as time barred is denied, without prejudice.

## IV.    Individual Defendants Barnhart, Capozzi, and Chung

Plaintiff alleges discrimination, retaliation, and failure to accommodate claims against

Individual Defendants Barnhart, Capozzi, and Chung.  It is well established that, to survive a

motion to dismiss, a complaint must plead sufficient facts "to state a claim that is plausible on its

face and allow the court to draw a reasonable inference that the defendant[s] [are] liable for the

misconduct alleged."  *Ishutkina v. CitiMortgage, Inc.*, 790 F. App'x 327, 328 (2d Cir. 2020)

(internal quotation marks and citations omitted).

Here, the TAC is completely devoid of any well pled facts regarding how these Individual

Defendants harmed Plaintiff.  Beyond failing to allege any action that Barnhart and Chung took,

the TAC only alleges that Capozzi summoned students, non-parties to this action, "to interrogate

them about their actions in posting writings in support of Dr. Washburn's program," without more.

TAC at ¶ 53.  Plaintiff erroneously contends that their dismissed complaints should be subsumed

into the TAC to provide the requisite facts.  *See*, Pl.'s Opp. at 6-7.  Complaints that have been

dismissed by a court no longer are operative and have no legal effect. *See, Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *See, also*, *Perrone v. Amato*, 2010 WL 11629624, at *7 (E.D.N.Y. Aug. 30, 2010). Accordingly, this action is dismissed as to Defendants Barnhart, Capozzi, and Chung for failure to state a claim upon which relief can be granted.

## V.     Title VII, Equal Protection Clause, and ADA Discrimination Claims

### A.     Title VII and Equal Protection Clause

Title VII discrimination claims are analyzed in tandem with Equal Protection Clause claims brought through § 1983 because the standards of liability are the same. *Hamilton v. City of New York*, 563 F. Supp.3d 42, 52 (E.D.N.Y. 2021) (citations omitted). Claims of sex-based discrimination are analyzed using a burden-shifting framework. *See*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015) (citing *McDonnell Douglas*, 411 U.S. 792 (1973)).

"To survive a motion to dismiss, a plaintiffs need only establish a prima facie case of sex discrimination by demonstrating that[:] (1) [the plaintiff] was within the protected class; (2) [the plaintiff] was qualified for the position; (3) [the plaintiff] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (internal quotation marks and citation omitted). "If a plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer at the summary judgment stage 'to articulate some legitimate, nondiscriminatory reason for the adverse employment action.'" *Id.* (quoting *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016). If an employer satisfies that burden, the plaintiff must submit admissible evidence from which a finder of fact could "infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Id.*

The Second Circuit has made clear that courts should be "mindful of the elusive nature of

intentional discrimination" and the frequency with which plaintiffs "rely on bits and pieces of information to support an inference of discrimination, *i.e.*, a mosaic of intentional discrimination." *Vega*, 801 F.3d at 86-87. Furthermore, the burden-shifting reduces the facts needed to be pled under *Iqbal* at the 12(b)(6) stage of a Title VII case. *Menaker*, 935 F.3d at 30. Accordingly, a plaintiff need only allege facts that give "plausible support to a minimal inference of discriminatory motivation." *Id.* at 30 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

### 1. Thomas & Driscoll

"An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citation omitted). Plaintiff asserts that both Thomas and Driscoll took adverse employment actions against them. However, the sole allegation pled against Thomas is that she failed to conduct a proper Title IX investigation. However, the failure to conduct a proper investigation does not constitute an adverse action. *See*, *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp.2d 670, 690 (S.D.N.Y. 2011); *Hayes v. Kerik*, 414 F. Supp.2d 193, 203 (E.D.N.Y. 2006). Additionally, there is no indication anywhere in the TAC that Driscoll's purported refusal to process Plaintiff's gender selections or her denial of Plaintiff's request for accommodations was disruptive to or altered Plaintiff's job responsibilities. In fact, Plaintiff fails to allege what accommodations they sought from Driscoll, let alone how Driscoll's conduct was motivated by Plaintiff's gender. Accordingly, Plaintiff fails to allege plausibly that either Thomas or Driscoll subjected Plaintiff to any adverse employment actions.

### 2. Russell & Ferretti

For purposes of this motion, Defendants do not challenge that Russell and Ferretti engaged

in some adverse actions. Instead, they contend that Plaintiff fails to allege an inference of discrimination. *See*, Defs.' Mem. at 17-20. The Court agrees. An inference of discrimination can arise from circumstances that include criticism of the plaintiff's performance in degrading terms that relate to their protected class, invidious comments about others in the employee's protected group, more favorable treatment of employees not in the protected group, or the sequence of events leading to the adverse action. *Littlejohn*, 795 F.3d at 312.

Here, the TAC is devoid of any remarks about Plaintiff's work performance or any invidious and gender based remarks. Although Plaintiff contends that Defendants misgendered Plaintiff "on many occasions" and that Russell expressed "discomfort" with Plaintiff's gender and gender identity, generalized and conclusory allegations are insufficient. *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 110 (2d Cir. 2012). Similarly, ambiguous remarks do not demonstrate discriminatory animus sufficient to support an inference of discrimination. *See, Brenner v. City of New York Dep't of Educ.*, 132 F. Supp.3d 407, 420 (E.D.N.Y. 2015), *aff'd*, 659 F. App'x 52 (2d Cir. 2016) (citation omitted).

While Plaintiff contends that similarly situated people were not subjected to any adverse employment actions, the TAC fails to identify them for comparison. When relying on evidence of disparate treatment to establish an inference of discrimination, a plaintiff must show that they were similarly situated in all material respects to the individuals with whom they seek a comparison. *See*, *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016) (citation omitted); *See also, Davis v. FedEx Ground Package Sys.*, 2017 WL 1239594, at *4 (E.D.N.Y. Mar. 31, 2017) (a complaint must identify the similarly situated employees with some specificity).

Finally, courts consider temporal proximity when determining whether the sequence of events gives rise to an inference of discrimination. *See*, *e.g.*, *Billings v. New York State Dep't of*

*Corr. & Cmty. Supervision*, 2021 WL 4150925, at *6 (S.D.N.Y. Sept. 10, 2021) (citing *Govori v. Goat Fifty*, *L.L.C.*, 519 Fed. Appx. 732, 734 (2d Cir. 2013)).  Plaintiff contends that they began identifying as transgender within the past six years and experienced discrimination after coming out as transgender.  TAC at ¶¶ 29, 35.  However, Plaintiff fails to specify when they came out as transgender and the dates for Russell's and Ferretti's actions that would allow the Court to infer temporal proximity.  Consequently, this allegation is too vague and non-specific as to time in order to serve as the basis for showing temporal proximity.  *See*, *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 19 (2d Cir. 2015); *See, also*, *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp.3d 396, 412 (S.D.N.Y. 2014) (collecting cases).  Accordingly, Plaintiff fails to allege plausibly that Russell's or Ferretti's actions give rise to an inference of discriminatory motivation.

### 3.    Kingsborough & CUNY

An employer is subject to vicarious liability under Title VII to a victimized employee when the actionable discrimination was caused by a supervisor.  *See, Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  A "supervisor" is an individual who is empowered by the employer to take tangible employment actions against the victim.  *See, Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 50 (2d Cir. 2012).  As pled, Russell and Ferretti fit this definition, but Plaintiff fails to allege plausibly gender based discrimination against either defendant, as discussed above. Moreover, Plaintiff fails to attribute any gender based discrimination to Kingsborough or CUNY. Accordingly, Plaintiff's discrimination claims brought under Title VII and Equal Protection Clause through § 1983 are dismissed.

### B.    ADA Discrimination

The ADA establishes that no covered entity "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To plead a *prima facie* case of employment discrimination under the ADA, a plaintiff must show that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [their] employer; (3) [they were] otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [they] suffered an adverse employment action; and (5) the adverse action was imposed because of [their] disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). However, at the pleading stage, "a plaintiff must plausibly allege that (1) [their] employer took an adverse action against [them], and (2) the disability or perceived disability was a 'motivating factor' in the decision." *Miller v. N.Y.C. Dep't of Educ.*, 2016 WL 5947272, at *2 (E.D.N.Y. Oct. 12, 2016) (citing *Vega*, 801 F.3d at 87).

"The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). When determining whether the plaintiff suffers a disability under subsection (A), the Supreme Court requires district courts to consider three factors: "(1) whether plaintiff had an impairment; (2) whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment." *Laface v. E. Suffolk Boces*, 349 F. Supp.3d 126, 145 (E.D.N.Y. 2018) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)).

The EEOC also has promulgated regulations that expand upon the ADA's definition of "disability." *Zuckerman v. GW Acquisition LLC*, 2021 WL 4267815, at *10 (S.D.N.Y. Sept. 20, 2021). Under these regulations, physical or mental impairments include:

> Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h) (emphasis added).

> Major life activities may include, but are not limited to:

> Caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; and the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

42 U.S.C § 12102(2) (emphasis added).

Moreover, "[t]he term substantially limits shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA and is not meant to be a demanding standard." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014).

Here, Plaintiff fails to define gender dysphoria or identify any impairment that results from it or their gender confirming surgery. Additionally, Plaintiff fails to allege any major life activity that has been limited substantially. Indeed, Plaintiff's allegations appear to indicate quite the contrary. For example, Plaintiff continued to teach, attended and spoke at colleges nationwide, including Kingsborough, testified before government bodies, and drafted both an op-ed article and public petition, for which activities they allege to have attained some positive acclaim. TAC ¶¶ 33-34, 61, 63-64, 66-69. Therefore, Plaintiff fails to establish a disability under subsection (A). *See, Broderick v. Research Found. of State Univ. of N.Y.*, 2010 WL 3173832, at *2 (E.D.N.Y. Aug. 11, 2010). The TAC also is devoid of any record of impairment and, thus, Plaintiff has not satisfied subsection B of the ADA disability definition.

Moreover, Plaintiff fails to plead sufficient facts to establish that they were regarded as being disabled. "This type of claim turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability." *Amador v. Macy's E.-Herald Square*, 2014 WL 5059799, at *18 (S.D.N.Y. Oct. 3, 2014) (internal quotation marks and citation omitted). Here, Plaintiff only tenders conclusory assertions that Defendants perceived them as having a disability without any allegations of fact in support. *See*, TAC at ¶¶ 178, 210, 242. Accordingly, Plaintiff fails to plausibly allege a disability under the ADA and as such, Plaintiff's disability discrimination claim is dismissed.

## VI. Reasonable Accommodation Claim

To establish a failure to accommodate claim under the ADA, a plaintiff must allege plausibly that: (1) they are disabled within the meaning of the ADA; (2) their employer is a covered entity; (3) they could perform the essential functions of their job with an accommodation; and (4) the defendants refused to provide such an accommodation despite being on notice. *See*, *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015).

Plaintiff's failure to even allege a disability is fatal to her accommodations claim under the ADA. Significantly, the TAC does not contain any allegations whatsoever specifying what accommodations Plaintiff sought and how those accommodations, if granted, would have allowed Plaintiff to perform the essential functions of their job. Without such allegations, failure to accommodate claims cannot survive a motion to dismiss. *See*, *Lievre v. JRM Constr. Mgmt., LLC*, 2019 WL 4572777, at *20 (S.D.N.Y. Sept. 20, 2019) (collecting cases). Accordingly, Plaintiff's failure to accommodate claim is dismissed.

**VII.    Federal Retaliation Claims**

**A.    Title VII & ADA Retaliation**

Retaliation claims pursuant to Title VII and the ADA are analyzed under the same framework and will withstand a motion to dismiss when a plaintiff plausibly alleges: (1) participation in a protected activity; (2) that the employer was aware of this activity; (3) that the employer took an adverse employment action against them; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

For retaliation claims, the Second Circuit provides a broad view of adverse actions that go beyond conduct that affects the terms and conditions of employment, requiring action that could dissuade a reasonable worker from making or supporting a charge of discrimination. *Vega*, 801 F.3d at 90 (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). The causation element can be shown either: "'(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

On October 12, 2018, Plaintiff filed a Title IX Complaint with Kingsborough based upon the purported misconduct they faced because of their gender identity. TAC at ¶ 73. Internal complaints constitute a protected activity. *See, Amin v. Akzo Nobel Chems., Inc.*, 282 Fed. Appx. 958, 961 (2d Cir. 2008). However, as discussed above, Plaintiff's contention that Thomas retaliated against them by failing to conduct a proper investigation does not amount to an adverse

action for a claim of retaliation.  *See*, *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721, 722 (2d Cir. 2010).

In addition to their discrimination complaint under Title IX, Plaintiff also engaged in protected activities when they filed discrimination complaints with the CCHR and EEOC on November 21, 2018 and October 24, 2019, respectively.  *See, Matima v. Celli,* 228 F.3d 68, 78 (2d Cir. 2000).  Plaintiff contends that, in response to their complaints, Ferretti informed Plaintiff that she would not support the WGS Program in the English Department "for obvious reasons" and retaliated by meeting with Russell to remove "WGS" course designations from almost all English classes, including Plaintiff's class.  TAC at ¶¶ 39-40.

Plaintiff alleges that removing course designations had an adverse effect on their ability to teach, but did not allege specifically how their ability to teach was affected.  Importantly, they do not articulate how this would have dissuaded them from seeking redress for their discrimination complaints.  *Cf*, *Ortiz v. Metro. Transportation Auth.*, 2014 WL 11460929, at *12 (S.D.N.Y. Sept. 30, 2014), *aff'd sub nom., Ortiz v. Metro. Transp. Auth.*, 615 F. App'x 702 (2d Cir. 2015).  Even if removing course designations could dissuade a reasonable worker from supporting a charge of discrimination, Plaintiff fails to allege plausibly a causal connection between removing course designations and their discrimination complaints.  Plaintiff's contention that "for obvious reasons" referred to their discrimination complaints is speculative and fails to establish causation since it lacks context to draw such a conclusion.  *See, O'Connor v. New York State Dep't of Fin. Servs.*, 2022 WL 3998099, at *8 (N.D.N.Y. Sept. 1, 2022).  Moreover, because Plaintiff fails to allege when this purported retaliation occurred in the context of the filing of their three discrimination complaints, which Plaintiff refers to collectively in the TAC, the Court cannot infer causation.  *See,* TAC, at ¶¶ 39-40; *Cowan v. City of Mount Vernon*, 2017 WL 1169667, at *12 (S.D.N.Y. Mar.

28, 2017) ("without a clear timeline of the events[,]" a court is unable to determine whether the protected activity and the purported adverse action were "close enough in time to allow for an inference of causation").

Finally, Plaintiff contends that they sought accommodations that were denied by Russell, Ferretti, and Driscoll, but nowhere in the TAC is it alleged what accommodations Plaintiff sought. *See*, TAC at ¶¶ 37, 46. While seeking an accommodation can serve as a protected activity under the ADA, it cannot constitute a protected activity and, at the same time, serve as the basis for a failure to accommodate claim. *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002). "Courts in this Circuit have held that an activity comprising a plaintiff's failure-to-accommodate claim, cannot also constitute a protected activity such as that required in retaliation claims." *Vega v. Dep't of Educ.*, 2020 WL 1505564, at *10 (S.D.N.Y. Mar. 30, 2020) (collecting cases). Also fatal to Plaintiff's retaliation claim, the TAC is devoid of allegations as to any adverse actions taken after and in response to Plaintiff seeking an accommodation. See*, Bell v. McRoberts Protective Agency*, 2016 WL 1688786, at *3 (S.D.N.Y. Apr. 25, 2016) (citing *Henry*, 18 F. Supp.3d at 411). Accordingly, Plaintiff's retaliation claims under Title VII and the ADA are dismissed.

### B.     First Amendment Retaliation

To establish a First Amendment claim of retaliation, Plaintiff must allege plausibly that: (1) their speech or conduct was protected by the First Amendment; (2) defendants took an adverse action against them; and (3) there was a causal connection between this adverse action and the protected speech. *Montero v. City of Yonkers, New York*, 890 F.3d 386, 394 (2d Cir. 2018). For public employees, speech that occurred in their workplace may be protected from retaliation if they are speaking as citizens upon matters of public concern. *Id*. at 395.

Here, Plaintiff contends that they engaged in an array of activities that are protected by the First Amendment. TAC at ¶¶ 61, 120, 122-124. To the extent that any of these allegations amount to a protected activity, Plaintiff fails to allege what adverse action occurred after and in response to this activity as required to support a retaliation claim. *See, Bell*, 2016 WL 1688786, at *3 (citing *Henry*, 18 F. Supp.3d at 411). Accordingly, Plaintiff's retaliation claim under the First Amendment is dismissed.

## VIII.   Hostile Work Environment Claims

### A.      ADA Hostile Work Environment

To sustain an ADA hostile work environment claim, plaintiffs re required to show that discriminatory treatment resulted from their disability. *See, Dollinger v. New York State Ins. Fund*, 726 F. App'x 828, 831 (2d Cir. 2018). As discussed above, Plaintiff has failed to allege a disability under the ADA. Accordingly, their hostile work environment claim under the ADA is dismissed.

### B.      Title VII and Title IX Hostile Work Environment

#### 1.      Title IX Claims against Individual Defendants

It is well established in this Circuit that "only the institutional recipient of federal funds can be held liable under Title IX; individuals, who are not recipients, cannot be held liable." *Hauff v. State Univ. of New York*, 425 F. Supp.3d 116, 133 (E.D.N.Y. 2019) (collecting cases). Accordingly, Plaintiff's hostile work environment claim under Title IX is dismissed as to all remaining Individual Defendants, Russell, Ferretti, Thomas, and Driscoll.

#### 2.      Institutional Defendants

"A Title IX hostile education environment claim is governed by traditional Title VII hostile [work] environment jurisprudence." *Id*. at 135 (citing *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 89 (2d Cir. 2011)). Hostile work environment claims are grounded in the ambiguous and amorphous nature of a general work atmosphere. *Perry v. Ethan Allen, Inc.*,

115 F.3d 143, 149 (2d Cir. 1997) (citation omitted). This translates to a continuous series of incidents or an extraordinarily severe event. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (citing *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

"To state a claim for a hostile work environment, a plaintiff must plead facts that would tend to show that the alleged conduct: (1) is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citations omitted). Courts also must consider the totality of the circumstances when evaluating a hostile work environment claim, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Littlejohn*, 795 F.3d at 321 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). The principle focus of these factors is the frequency and severity of the alleged conduct. *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009).

While the standard for establishing a hostile work environment is high, the Second Circuit cautions district courts "against setting the bar too high[.]" *Patane*, 508 F.3d at 113. To survive a motion to dismiss, a plaintiff only needs to show facts sufficient to support the conclusion that they faced conduct "of such quality or quantity that a reasonable employee would find the conditions of [their] employment altered for the worse." *Id.* at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)). "It is axiomatic that in order to establish a sex-based hostile work environment under Title VII [or Title IX], a plaintiff must demonstrate that the conduct occurred because of [their] sex." *Alfano*, 294 F.3d at 374 (internal quotation marks and citation omitted).

Applying these principles to the case at bar, Plaintiff has failed to allege plausibly a hostile work environment claim. As an initial matter, Plaintiff contends that they were misgendered "on many occasions, in person and in writing, despite clear notice of Dr. Washburn's proper name, title and gendered pronouns." TAC at ¶ 47. This included the College Catalog using Plaintiff's former female name. *Id.* at ¶ 48. While intentionally misgendering a transgender person can lend support for a hostile work environment claim, the complaint must allege more than simply "an unadorned, the-defendant-unlawfully-harmed-me accusation." *See*, *Iqbal*, 556 U.S. at 678; *See, also*, *Doe v. Pennsylvania Dep't of Corr.*, 2022 WL 3219952, at *5 (M.D.PA. Aug. 9, 2022); *Milo v. CyberCore Techs., LLC*, 2019 WL 4447400 at *6 (D. MD. Sept. 17, 2019); *Higgs v. Cava Grp., Inc.*, 239 F. Supp.3d 257, 259 (D.D.C. 2017).

In *Doe*, the court found that misgendering contributed to a hostile work environment when the plaintiff was misgendered with "female pronouns on an almost daily basis" which occurred "f]rom the moment that [the plaintiff] had disclosed [an] intent to transition until the day that [the plaintiff] had left [work]" and indignities continued after the plaintiff corrected the pronoun usage. *Doe*, 2022 WL 3219952 at *5 (noting that these indignities included statements such as "[w]ell, you still have tits and a twat, right?" and "[y]ou minorities get what you deserve."). Similarly, in *Higgs*, the court found that the plaintiff plausibly alleged a hostile work environment based upon misgendering when the complaint "outlined a series of disrespectful comments and instances of misgendering on the part of various [] employees, including repeated comments regarding [the] [p]laintiff's sexual identity and remarks questioning whether Plaintiff was a prostitute." *Higgs*, 2020 WL 134537, at *7.

However, in *Milo*, the court held that the plaintiff failed to allege a hostile work environment when faced with a mere handful of incidents, none of which were physically

threatening, and only included sporadic references to "him" or "he" rather than "her" or "she." *Milo*, 2019 WL 4447400, at *6. Moreover, when the plaintiff in *Milo* amended the complaint to included additional information, the court held that the amended allegations failed to support a hostile work environment claim under Rule 12(b)(6) because the allegations provided minimal insight into the nature or frequency of misgendering. *See*, *Milo v. CyberCore Techs., LLC*, 2020 WL 134537, at *6 (D.MD. Jan. 13, 2020) (general allegations of misgendering fail to support a hostile work environment claim because a court is unable to assess and determine the nature and extent of the harassment).

Here, the TAC is devoid of allegations as to what was said, who made the statements, when these statements were made, or the frequency (*e.g.*, misgendering occurring multiple times a day over the course of several months). *See, Cowan v. City of Mount Vernon*, 2017 WL 1169667, at *5 (S.D.N.Y. Mar. 28, 2017) (amorphous allegations are insufficient even to clear the low bar of plausibility). Notably, the TAC does not allege any facts as to how Defendants knew they were misgendering Plaintiff, except for a conclusory allegation that Defendants "had clear notice of Plaintiff's preferred pronounces." TAC at ¶ 47. Thus, these vague, conclusory allegations do not satisfy Plaintiff's obligation to allege facts concerning the who, what, where, when, how, and how often of the purported misgendering of Plaintiff. *See*, *Iqbal*, 556 U.S. at 679; *See also*, *Milo*, 2020 WL 134537, at *6.

As noted above, Plaintiff further alleges that, during the past six years, they were subjected to, *inter alia*: (1) the denial of grants and access to the WGS Program's materials; (2) a reduction in resources for the WGS Program; (3) an office relocation; (4) changes in academic courses and course times that purportedly interfered with unspecified accommodations; and (5) the denial of unspecified accommodations for an undefined or unidentified disability. Generally, decisions

affecting an employee's ability to perform their job may alter the terms and conditions of their employment for the worse. *See*, *Morin v. Tormey*, 620 F. Supp.2d 353, 363 (N.D.N.Y. 2009), *aff'd*, 626 F.3d 40 (2d Cir. 2010); *See also*, *Belyea v. City of Glen Cove*, 2022 WL 3586559, at *11 (E.D.N.Y. Aug. 22, 2022). However, these facially neutral incidents are insufficient to support Plaintiff's hostile work environment claim because, as discussed above, the TAC fails to connect them plausibly to Plaintiff's gender. *See*, *Alfano*, 294 F.3d at 378. Furthermore, the TAC fails to allege how frequently these events occurred or the severity of its impact, other than the conclusory allegation that the denial of resources made it more "difficult" for Plaintiff to conduct the business of the WGS Program. TAC at ¶ 37.

Plaintiff further contends that the treatment of their co-workers and students should be considered when assessing a hostile work environment. Pl.'s Opp. at 13-14. Under certain circumstances not present here, courts in this Circuit have considered the treatment of other persons in establishing a hostile work environment. *See*, *Sotomayor v. City of New York*, 862 F. Supp.2d 226, 246-47, 260-61 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013). Here, the TAC alleges only that students faced interrogations, threats, and consequences that made it harder for them to graduate because they supported the WGS Program. TAC ¶¶ at 51-58. Additionally, Professor Moore's office was moved after he supported WGS Program student for a newspaper article that the student had written. *Id*. at ¶ 51. There is no other information in the TAC about Professor Moore. Notably, the TAC fails to allege how these actions altered *Plaintiff's employment conditions for the worse*, as opposed to Professor Moore's conditions of employment and the students' experience at Kingsborough. *See*, *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)("the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find *the conditions of [their] employment altered for the*

*worse*.") (emphasis added) (quoting *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir. 1997), cert. denied, 522 U.S. 997 (1997)).

For the foregoing reasons, as the Court finds that the TAC fails to allege sufficiently that Plaintiff faced conduct of such quality or quantity that a reasonable employee would find the conditions of their employment altered for the worse because of their gender, Plaintiff's Title VII and Title IX hostile work environment claims are dismissed.

## IX. Due Process Claims

The Due Process Clause of the Fifth and Fourteenth Amendments cover both fair process and "certain government actions regardless of the fairness of the procedures used to implement them." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). As an initial matter, Plaintiff does not indicate whether they bring either substantive or procedural due process claims under the Fifth or Fourteenth Amendment. In any event, to establish a violation of either procedural or substantive due process, a plaintiff first must identify a liberty or property interest that was deprived. *Goodspeed Airport v. East Haddam Land Trust, Inc.*, 166 Fed. Appx. 506, 508 (2d Cir.2006). Here, Plaintiff fails to identify the liberty or property interest that was deprived. Accordingly, Plaintiff's Due Process Clause claims are dismissed.

## X. Abandonment of Claims

Out of an abundance of caution, the Court has examined and addressed each of the federal causes of action alleged in the TAC. However, it bears noting that abandonment of claims provides another basis for dismissal of most of the federal claims. Plaintiff's opposition to Defendants' motion to dismiss for failure to state a claim explicitly states that "Plaintiff is not alleging adverse actions. Plaintiff is asserting that there was and is a hostile work environment based on gender, gender identity, disability and retaliation." Pl.'s Opp. at 12. Moreover, Plaintiff only attempted

to defend their hostile work environment claims and their claim of retaliation under the First Amendment. *Id.* at 12-15. It is well established in this Circuit that it is appropriate in Rule 12(b)(6) motions and summary judgment motions to infer from a counseled party's opposition that undefended claims are deemed abandoned. *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014); *Harley v. The City of New York*, 2016 WL 552477, at *7 (E.D.N.Y. Feb. 10, 2016).

## XI. State and Local Claims

Under 28 U.S.C. § 1367(c)(3), "a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). A district court's discretion is guided by "balanc[ing] the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7. "A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).

Plaintiff asserts ten NYSHRL and NYCHRL claims as well as two claims under the New York State Constitution. All of the federal claims have been dismissed with prejudice. In balancing the factors noted above, the Court notes that the parties have spent virtually all of their time in this case briefing motions to dismiss the three deficient complaints filed by Plaintiff. They have not spent any time whatsoever engaging in discovery or settlement discussions. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's New York law claims, which are dismissed without prejudice.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss for failure to state a claim is granted as to Plaintiff's federal claims, which are dismissed with prejudice, and the Court declines to exercise supplemental jurisdiction over Plaintiff's New York law claims, which are dismissed without prejudice.

SO ORDERED.

Dated: Brooklyn, New York
      March 29, 2023

_____
/s/
DORA L. IRIZARRY
United States District Judge
